## Himyar Coal Corporation v. Gordon et al.

(Decided Oct. 15, 1935.)

CRAFT & STANFILL for appellant.

ROY HELM for appellees.

OPINION OF THE COURT BY CREAL, COMMISSIONER—Affirming.

In October, 1931, E. C. Gordon was working in the mines of the Himyar Coal Corporation. The coal corporation was operated under the Workmen's Compensation Law (Ky. Stats. sec. 4880 et seq.) and Gordon had

signed the register electing to work under the provisions of the act. On October 5, while Gordon was repairing a cutter chain, a small piece of steel struck and penetrated his left eye. He immediately went to and was treated by a physician for the company, and the pain in his eye was relieved, although the piece of steel was not removed. He continued working for the company for about 11 months, but in the first part of September, 1932, his eye began giving him serious trouble. He was sent to Dr. B. M. Brown at Hazard, and at the suggestion of a representative of the Bituminous Casualty Corporation, insurance carrier for the Himyar Coal Corporation, the eyeball was removed. According to the evidence of Dr. Brown, the eye was clouded with rust, the vision gone or very greatly impaired, and it was necessary to remove it in order to prevent loss of sight of the other eye.

On July 24, 1933, Gordon made application for adjustment of compensation with the Workmen's Compensation Board and the Himyar Coal Corporation entered a special plea of limitation because the claim for compensation had not been filed within one year from the date of the accident. The board awarded Gordon compensation at the rate of $12 per week for 120 weeks. The company filed a petition for review in the Perry circuit court, and the court affirmed the award of the compensation board. The company is appealing.

It is not denied that appellee received his injuries in the course of his employment, nor is any question made concerning the nature or extent of his injuries or the amount of the award. It is stated in brief by counsel for appellant that no question is made of the loss of the eye or any other question except that of limitation. In order to properly dispose of that question, it is necessary to give a short resume of the evidence.

After receiving the initial treatment, appellee's eye gave him no further trouble and he continued regularly in his work for appellant until he began to suffer great pain and about the 14th of September was sent to Dr. Brown and the eyeball removed. He remained in the hospital for several days, and in the meantime sent his wife to see officers of the company concerning payment of compensation, or, as the latter claims, to secure advancements. Mrs. Gordon went to see Mr.

Douglas, who, according to the evidence, was in charge of the compensation matters for the company, and who made advance compensation payments to employees. Under an agreement and understanding which she reached with Mr. Douglas, the company paid him $2 or $3 per day until about October 14, 1932, after which no further voluntary payments were made. Mrs. Gordon testified in substance that Mr. Douglas told her appellee was entitled to compensation and that money would be advanced to him by appellant until settlement was made, at which time the advance would be taken out of the compensation checks. She testified that she told Mr. Douglas, as instructed by her husband, that he did not want to go into debt. Mr. Douglas admitted that Mrs. Gordon told him she did not want to run her husband in debt, but testified positively that they had no direct understanding that appellant was to pay her compensation. He was vague and indefinite in his evidence concerning his statements to Mrs. Gordon about the compensation. He was shown and admitted that he made a sworn statement on July 17, 1933. In this affidavit or sworn statement it is said in effect that appellee was injured on October 6, 1931; that the affiant reported the accident to the Workmen's Compensation Board through appellant's insurance carrier; that at the time appellee was sent to a physician but did not lose any time from work on account of the injury to his eye; that about September 5, 1932, the eye "flared up and we sent him to Dr. Brown at Hazard for treatment"; that Mrs. Gordon came to see about getting goods and asked about compensation payments and talked the matter over; that she wanted to get some goods out of the commissary but did not want to run Mr. Gordon in debt; that she asked if there would not be some compensation coming, and he explained to her that appellee would be due compensation, and that appellant would advance all the money she wanted and she could pay for it as the checks for insurance came in; that it was the understanding that advancements were being made against the compensation due Mr. Gordon on account of the injury to his eye.

Objection was made to the evidence of Mrs. Gordon on the ground that she was the wife of appellee and not a competent witness for him under the provisions of section 606 of the Civil Code of Practice. The argument overlooks an exception to the Code provision, that

712

neither a husband or wife may testify for or against the other, which provides that "When a husband or wife is acting as agent for his or her consort, either of them may testify as to any matter connected with such an agency." Clearly, in this instance, the wife was acting as the agent of her husband, and the contention that she was an incompetent witness under the provisions of the Code is without merit.

In making contention that its plea of limitation should be sustained, appellant cites and relies on section 4914 Kentucky Statutes, which prescribes the time within which proceedings under the Workmen's Compensation Act should be instituted, but the latter portion of that section provides:

"If payments of compensation as such have been made voluntarily the making of a claim within such period shall not be required, but shall become requisite following the suspension of such voluntary payments."

To avoid the effect of this quoted provision of the statute, it is contended by counsel for appellant that voluntary payments of compensation were not made, but they were simply advancing money or extending credit to appellee, but the evidence for appellee indicates otherwise, and when the evidence of appellant's own witnesses as a whole is taken into consideration, it is apparent that it was the understanding and agreement between the parties that the payments made to appellee by appellant were advancements made against the compensation which would be due Mr. Gordon.

It is therefore manifest that under the quoted provisions of the statute appellant's plea of limitation must fail, since there was ample evidence to sustain the finding of the compensation board. There are other reasons why the plea of limitation cannot be sustained, but what we have already said renders it unnecessary to enumerate or discuss them.

Judgment affirmed.